**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **1ST JARAY LTD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 7:24-cv-00286-DC-RCG** |
| | § | |
| **COVINGTON SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

    1st Jaray LTD ("Jaray"), Plaintiff herein, files this Original Complaint against Covington Specialty Insurance Company ("Covington") and, in support of its causes of action, respectfully shows this Court the following:

**THE PARTIES**

    1.    Jaray is a limited liability company doing business in the state of Texas with its principal office located in Midland County, Texas.

    2.    Covington is an insurance company doing business in the state of Texas, incorporated in the state of New Hampshire and maintaining its principal place of business in the state of Georgia. Covington has already been served in this matter and appeared through counsel of record.

**JURISDICTION AND VENUE**

    3.    This court has subject matter jurisdiction of this cause of action pursuant to 28 U.S.C. § 1332.

**Plaintiff's Amended Complaint**                                                                                     **1**

4.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas, Midland/Odessa Divison.

## FACTUAL BACKGROUND

5.      1st Jaray Ltd. owns the commercial property located at 12600 W Interstate 20, Odessa, Texas 79765 ("the Property.") Jaray is the named insured under a commercial property insurance policy issued by Covington Specialty Insurance Company, bearing policy number VBA940872 00 ("the Policy"). At all times necessary and relevant to this suit, Jaray maintained adequate coverage for wind and/or hail damage at the Property.

6.      During this policy period, on or about October 2, 2023, a wind and hail storm ("the storm") hit the Odessa, Texas area, damaging Jaray's buildings and other property. The roof, exterior walls, and fixtures of the main and detached buildings all suffered hail damage, including indentations and spatter.

7.      Jaray subsequently filed a claim on its insurance policy and it was assigned the claim number 7030189148.

8.      Upon receiving the claim, Covington hired Trey Skaggs ("Skaggs"), a property adjuster working with Engle Martin, to conduct an inspection of the property and generate an estimate for the October 2, 2023 date of loss. Skaggs' estimate totaled $3,908.74, disregarding the majority of the damage to Jaray's property and attributing the cost to the west elevations of the roofs on the west storage building and commercial building. This estimate is a gross underestimation and misrepresentation of the damages suffered to the property and is conveniently below the $10,000 standard deductible applicable under the Policy. Thus, no payment was issued.

**Plaintiff's Amended Complaint**                                                                                                        **2**

9.      Two subsequent investigations of Jaray's property were conducted by (1) a public adjuster from National Public Adjusting LLC ("NPA") on November 16, 2023 and (2) Eric Homburg ("Homburg) from Scout Forensics on January 5, 2024.

10.      The NPA inspection was accompanied by an estimate that considered the extensive damage to Jaray's property, including the walls, gutters, and other fixtures to all buildings and other structures. This estimate totaled at $148,895.85 for replacement cost value and $146,200.50 for actual cash value. Unlike Skaggs' estimate, which is accompanied by no photos or evidence supporting how the adjuster reached his conclusions, NPA's estimate includes 15 pages of photographs showing clear hail hits to the property:



11.      The third investigation, conducted by Homburg, of Scout Forensics, provides a forensic report and no corresponding estimate. Homburg alleges that there is not significant prevalence of hail indentations on the property, and opines multiple times that the damages to the property do not have functional consequences, corroborating the initial erroneous estimate completed by Skaggs.

**Plaintiff's Amended Complaint**                                                                                        3

*In consideration of the preceding, it is Scout's professional opinion that the extent of hail-related damage to the metal panel roofing was limited to indentations totaling more than 10 per square on all roof facets except the south Commercial Building canopy. The hail-related indentations to the metal panel roofing would not facilitate the ingress of water or reduce the life expectancy of the roofing and, as such, did not constitute functional damage. Based on Scout's observations, review of historical weather data and review of historical aerial imagery, the hail-related indentations to the metal panel roofing were consistent with manifesting during more than one hailstorm event, with the most recent event occurring on May 24, 2022, and the largest magnitude event occurring on June 14, 2017.*

*None of the hail-related indentations to the metal wall panels resulted in a loss in the ability to prevent the ingress of precipitation or the reduction in the expected service life of the wall panels.*

12.    Homburg's report grossly misrepresents the damages to Jaray's property as cosmetic, when they are actually functional.

13.    Notably, the Policy states that it will not provide coverage for cosmetic damages. If all of the hail strikes to Jaray's property were cosmetic as Homburg alleges, then the estimate provided by Skaggs would have a complete zero balance. It's indisputable that there are hail marks across the entirety of the roofs as seen in the photos from NPA and Homburg, and Skaggs' choice to consider only those on the western elevations it is, at best, an honest mistake or unfortunate oversight. If it is not, it is selective misrepresentation of the facts and intentional denial and/or underpayment.

14.    Homburg was hired by Covington and provided his forensic report to them upon completion of his inspection. However, his report fails to thoroughly identify or document the damage to the seams and other function issues that have affected the functionality and life of the roof.

15.    Despite the widespread damage to Jaray's property, Covington knowingly refused to repair and/or replace the covered damages. Damages to the storage building alone account for more than $110,000, a cost well beyond the $10,000 deductible stipulated in the policy.

16.    In sum, Covington's estimate grossly misrepresented the scope and cost to repair and replace the damages to Jaray's property caused by the storm. These misrepresentations were present in Skaggs' estimate and Homburg's report. In his estimate, Skaggs, without any evidence

**Plaintiff's Amended Complaint**                                                                                   **4**

or demonstration of reasoning in an accompanying report, knowingly misrepresented the cost and scope of storm damage to Jaray's property. Skaggs, on behalf of Covington, misrepresented the cost by failing to include the reasonable costs to repair and/or replace the roofs, walls, and other covered property damaged by the storm. Additionally, through the omission of necessary repairs, Skaggs failed to include overhead and profit on a job that would require multiple trades, as evidenced by the NPA estimate and report. Denial and misrepresentation of the claim is clearly biased in favor of Defendant Covington.

17.     Obviously Jaray's loss was covered under the policy because Covington conceded coverage for the minimal damages Skaggs included on his estimate. But, because Skaggs knowingly omitted numerous items from his estimate, the repair estimate was a fraction of the actual amount needed to complete all the necessary repairs. Jaray has not disclosed its expert and expert opinions under Rule 26(a)(2), and discovery is going, but the NPA estimate to repair the covered damages demonstrates it will cost Jaray approximately $150,000 to repair the covered damage to the property. This is more than thirty times what Skaggs estimated.

18.     To date, Covington has not paid Jaray any amount on its claim.

19.     The misrepresentations in coverage and scope as described in the preceding paragraphs, along with the photos of clear hail indentations to Jaray's property, demonstrate a clear omission and misrepresentation of covered damages by Covington. Skaggs either made a grave series of errors in producing his estimate after a subpar investigation of the property, or deliberately undervalued the covered damages to the property and deliberately excluded the majority of the properly covered damages from his estimate, as described herein. This does *not* place Plaintiff in a pre-loss position, and it was done with full knowledge of the damages or with wanton disregard. This portion of the adjustment evidences an outcome-oriented investigation whereby Skaggs

**Plaintiff's Amended Complaint**                                                                                              **5**

attempted to avoid repairing and/or replacing Jaray's roofs – which Skaggs either knew or should have known was necessary, as it would have been obvious to a reasonable adjuster – and opted to scope minimal repairs in order to save Covington a significant amount of money. Covington further chose to ignore damages to the walls and other property, demonstrating further support of its improper denial and misrepresentation of functional damages as cosmetic.

20.    In conclusion, Covington and/or Skaggs, as employed by Covington, conducted a substandard investigation and inspection of the property, prepared an estimate that failed to include all of the damages that were observed during the inspection, and ignored obvious damage to Jaray's property. Additionally, Skaggs undervalued the damages observed during the inspection and value of damages admitted on his estimate. Skaggs then misrepresented the scope and amount of damage covered under the policy. Covington had the duty to pay for damages caused by a covered peril (wind/hail/rain) under the Policy on a replacement cost value basis. Covington breached this duty. All of this together evidences an unreasonable investigation. Further, these facts, taken together, amount to bad faith and are actionable under the Texas Insurance Code § 541.

21.    Jaray retained counsel after attempting to address its concerns with Covington. The damages sought by Jaray are clearly covered by the policy. Nevertheless, Covington has refused to change its position or explain its findings in further detail. Moreover, Covington's outcome-oriented investigation of Jaray's claim resulted in a biased, unfair, and inequitable evaluation of Jaray's losses on the property.

## **CAUSES OF ACTION**

22.    Each of the foregoing allegations is incorporated by reference in the following:

**A.  Breach of Contract**

23.    Covington had a contract of insurance with Plaintiff. Allstate breached the terms of that contract by wrongfully denying and/or underpaying the claim, and Plaintiff was damaged thereby.

### B.  Prompt Payment of Claims Statute

24.    The failure of Covington to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of § 542.015 *et seq.* of the Texas Insurance Code. Covington failed to pay for policy benefits owed to Jaray within the period set forth under § 542.058, along with any pre-judgment and post-judgment interest allowed under the Texas Finance Code.

25.    Plaintiff, therefore, in addition to its claims for damages, is entitled to statutory interest and attorney's fees as set forth in § 542.060 of the Texas Insurance Code.

### C.  Bad Faith

26.    Defendant is required to comply with Chapter 541 of Texas Insurance Code.

27.    Defendant violated § 541.051 of the Texas Insurance Code by:

(1) Making statements misrepresenting the terms and/or benefits of the policy.

28.    Defendant violated § 541.060 by:

(1) Misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

(2) Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

(3) Failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4) Failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

(5) Refusing to pay the claim without conducting a reasonable investigation with respect to the claim.

29.    Defendant violated § 541.061 by:

(1) Making an untrue statement of material fact;

(2) Failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

(3) Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact;

(4) Making a material misstatement of law; and

(5) Failing to disclose a matter requied by law to be disclosed.

30.    Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to Texas Insurance Code §§ 541.152(a) and 541.152(b).

**D.  Attorneys' Fees**

31.    Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

32.     Plaintiff is entitled to reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code 38.001 through 38.003 because it is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

33.     Plaintiff further prays that it be awarded all reasonable attorneys' fees incurred in prosecuting its causes of action through trial and any appeal pursuant to §§ 541.152 and 542.060 of the Texas Insurance Code.

## CONDITIONS PRECEDENT

34.     All conditions precedent to Plaintiff's right to recover have been fully performed, or have been waived by Defendant.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, upon final hearing of the case, it recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment and post judgment interest, and such other and further relief, general or special, at law or in equity, to which it may show itself to be justly entitled.

[Signature on the following page]

**Plaintiff's Amended Complaint**                                                                               **9**

Respectfully submitted,

**DALY & BLACK, P.C.**

By:    */s/ Maria R. Gerguis*
   Richard D. Daly
   State Bar No. 00796429
   rdaly@dalyblack.com
   Maria R. Gerguis
   State Bar No. 24090355
   mgerguis@dalyblack.com
   2211 Norfolk Street, Suite 800
   Houston, Texas 77098
   Telephone: (713) 655-1405
   Facsimile: (713) 655-1587
   Service: ecfs@dalyblack.com

   **ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2025, a true and correct copy of the foregoing was served on all counsel of record by the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

John Michael Raborn
Schouest, Bamdas, Soshea, BenMaier & Eastham PLLC
1001 McKinney Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 588-0446
Facsimile: (713) 574-2942
jraborn@sbsb-eastham.com

**ATTORNEY FOR DEFENDANT**

   */s/ Maria R. Gerguis*
   Maria R. Gerguis

**Plaintiff's Amended Complaint**      **10**